1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK SARACINO, Derivatively on behalf of BLUCORA, INC, | NO. |
| Plaintiff, | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT** |
| v. | |
| WILLIAM J. RUCKELSHAUS, ERIC M. EMANS, ANDREW M. SNYDER, JOHN E. CUNNINGHAM, IV, ELIZABETH J. HUEBNER, STEVEN W. HOOPER, LANCE G. DUNN, DAVID H. S. CHUNG, and JULES HAIMOVITZ, | |
| Defendants, | |
| -and- | |
| BLUCORA, INC., a Delaware corporation, | |
| Nominal Defendant. | **DEMAND FOR JURY TRIAL** |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIEDSHAREHOLDER
DERIVATIVE COMPLAINT

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment against defendants herein.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by plaintiff on behalf of nominal defendant Blucora, Inc. ("Blucora" or the "Company") against certain of its officers and directors for breaches of fiduciary duties and violations of law.  These wrongs resulted in hundreds of millions of dollars in damages to Blucora's reputation, goodwill, and standing in the business community.   Moreover, the Individual Defendants (as defined herein) have exposed the Company to hundreds of millions of dollars in potential liability for violations of state and federal law.

2.      This action concerns breaches of fiduciary duty by certain of the Company's officers and directors relating to misrepresentation of the Company's business health and the Company's longstanding use of unscrupulous tactics to gain improper advertising revenue in violation of the terms of certain agreements with business partners, including Google Inc. ("Google").  As explained in greater detail below, the Individual Defendants are responsible for allowing the Company to violate various contract terms with Google for years, which ultimately led Google to alter the terms of the contract and significantly reduce the Company's revenue stream.

3.      Blucora operates three different business segments: internet search, online tax preparation services, and e-commerce.  Blucora generates the majority of its revenues through the Search segment, known as InfoSpace LLC ("InfoSpace").   InfoSpace operates multiple "metasearch" websites.  When a customer uses an InfoSpace website to search for information, the InfoSpace website sends user requests to other search engines, including Google and Yahoo!,

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

and aggregates the results into a single list.  The list is then provided to the customer along with various advertisements.  If the customer clicks on an advertisement, Google (or other of the Company's advertising partners) receive a fee, and InfoSpace receives a portion of that fee.

4.      Google accounted for 88% of Blucora's total Search revenues in 2013, and 66% of the Company's total revenue for the same period.  Because the majority of Blucora's revenues are heavily reliant on Google, the Individual Defendants paid especially close attention to Google's policies and the Company's relationship with Google.  Indeed, Blucora has repeatedly noted in its public filings that its financial results may be substantially, negatively impacted by "changes or potential changes in [the Company's] relationship with Google…" or "the loss, termination, or reduction in scope of key search distribution relationships, … or any suspension by our Search Customers (particularly Google) of the right to use or distribute content on the web properties of our distribution partners."

5.      Despite the Company's significant reliance on Google as a source of revenue, for years the Individual Defendants caused or allowed the Company to operate InfoSpace in an unscrupulous manner in violation of both Google's standard guidelines and the Company's explicit agreement with Google.  The Individual Defendants further failed to disclose the Company's improper business tactics, and failed to disclose that Google would likely significantly alter or altogether terminate Blucora's contract as a result of the Company's repeated impropriety.

6.      On February 18, 2014, Gotham City Research LLC ("Gotham City Research") published a research report entitled "Blucora (i.e., Infospace) Worse Than Blinkx Plc And Babylon Ltd."  As noted in the report, at least 50% of Blucora's web traffic is derived from: (i) illicit clicks from users searching for child pornography, pirated content, or other illegal goods

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 2 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

and services; (ii) involuntary clicks based on intentional deceit or through the use of malicious software "malware" and computer viruses; and (iii) "click fraud," including artificial ad clicks made by cheap laborers in India and other developing countries that are paid to click on ads but are not actual potential customers.  The report found that Blucora has been using some or all of the above improper practices since at least 2005.  The report further predicted that the Company would soon receive scrutiny for its improper tactics from Google, certain advertisers, and various regulatory agencies.

7.      The market's reaction to the above revelations concerning the Company's improper business tactics and the Individual Defendants' material misstatements and omissions was swift.  The same day the report was published, Blucora's stock fell 8%, or $2 per share, to close at $21.70 compared to the previous trading day's closing of $23.70, erasing over $82.3 million in market capitalization.

8.      On February 20, 2014, after the market closed, the Company filed a Current Report on Form 8-K with the U.S. Securities and Exchange Commission ("SEC") announcing that, as predicted by Gotham City Research, Google canceled a portion of the service agreement contract with Blucora.  In particular, the Form 8-K revealed that InfoSpace will no longer be allowed to display ads for search traffic that originates from mobile or tablet devices, but instead would be limited to displaying ads for search traffic that originates from desktops and laptops.

9.      In the wake of the disclosure, Blucora's stock plunged another 8%, or $1.77 per share on February 21, 2014, to close at $19.80 compared to the previous trading day's closing of $21.57, erasing an additional $72.9 million in market capitalization.  Between February 14, 2014, the last trading day before the Gotham City Research report was published, and February 21, 2014, the day after the Company admitted that Google severed certain portions of its service

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 3 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

agreement with the Company, Blucora's market capitalization fell more than 16.4%, from $976.3 million to $815.7 million, wiping out more than $160.6 million in one week of trading.

10. Further, as a direct result of this unlawful course of conduct, the Company is now the subject of numerous federal securities class action lawsuits filed in the United States District Court for the Western District of Washington on behalf of investors who purchased Blucora's shares.

11. Before the market learned of Blucora's improper business practices and their negative affect on the Company's contract with Google, certain Individual Defendants used their knowledge of the Company's true business health to benefit themselves. While causing the Company to make improper statements that inflated its stock price, at least one of the Company's directors sold over $28.6 million worth of stock at artificially inflated prices.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) because complete diversity exists between plaintiff and each defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

13. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 4 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) Blucora maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Blucora, occurred in this District; and (iv) the defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

**Plaintiff**

15.     Plaintiff Mark Saracino was a shareholder of Blucora at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Blucora shareholder.  Plaintiff is a citizen of Pennsylvania.

**Nominal Defendant**

16.     Nominal Defendant Blucora is a Delaware corporation with principal executive offices located at 10900 NE 8th Street, Suite 800, Bellevue, Washington. Accordingly, Blucora is a citizen of Delaware and Washington.  Blucora operates a diverse group of internet businesses divided into three different segments.  The Search segment is the InfoSpace business which provides search services to distribution partners' web properties as well as to its owned and operated web properties.  The Tax Preparation segment consists of the operations of TaxACT, Inc. ("TaxACT"), which Blucora acquired on January 31, 2012, and provides online tax preparation service for individuals, tax preparation software for individuals and professional tax preparers, and ancillary services.  The E-Commerce segment consists of the operations of

Monoprice, Inc. ("Monoprice"), which Blucora acquired on August 22, 2013, and provides self-branded electronics and accessories to both consumers and businesses.

**Defendants**

17.     Defendant William J. Ruckelshaus ("Ruckelshaus") is Blucora's President and Chief Executive Officer ("CEO") and has been since November 2010 and director and has been since May 2007.  Defendant Ruckelshaus knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects.  Despite this knowledge, defendant Ruckelshaus knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects.  Blucora paid defendant Ruckelshaus the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|---------------|----------------------------------------|------------------------|-------|
| 2013 | $450,000 | $823,140 | $1,094,270 | $450,450 | $10,515 | $2,828,375 |

Defendant Ruckelshaus is a citizen of Washington.

18.     Defendant Eric M. Emans ("Emans") is Blucora's Chief Financial Officer and Treasurer and has been since August 2011.  Defendant Emans was also Blucora's Chief Accounting Officer from January 2008 until August 2011; Corporate Controller from September 2006 to January 2008; and held various positions at Blucora from September 2003 to December 2005, including Manager, Revenue Assurance and Senior Manager, Finance.  Defendant Emans knew that: (i) more than half of the Company's web traffic was derived from malware, click

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 6 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects.   Despite this knowledge, defendant Emans knowingly, recklessly, or with gross negligence made improper statements in the Company's press releases and public filings concerning the Company's business prospects.  Blucora paid defendant Emans the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation | Total |
|------|--------|--------------|---------------|----------------------------------------|------------------------|-------|
| 2013 | $300,000 | $129,120 | $527,238 | $191,700 | $9,330 | $1,157,388 |

Defendant Emans is a citizen of Washington.

19.     Defendant Andrew M. Snyder ("Snyder") is a Blucora director and has been since August 2011.  Defendant Snyder is also CEO of Cambridge Information Group, Inc. ("CIG"), a large Blucora shareholder.  Defendant Snyder knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects.   Despite this knowledge, defendant Snyder knowingly or recklessly caused or allowed the Company to make improper statements in the Company's press releases and public filings concerning the Company's business prospects.   Further, while in possession of material, non-public information concerning Blucora's true business health, defendant Snyder, as CEO of CIG, caused CIG to sell over one million shares of its stock for over $28.6 million in proceeds.  Blucora paid defendant Snyder the following compensation as a director:

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 7 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $29,330 | $79,650 | $50,427 | $159,407 |

Defendant Snyder is a citizen of New York.

20.    Defendant John E. Cunningham, IV ("Cunningham") is Blucora's Chairman of the Board of Directors (the "Board") and has been since 2011 and a director and has been since July 1998.  Defendant Cunningham was also Blucora's Lead Independent Director from February 2010 to December 2010.  Defendant Cunningham is a member of Blucora's Audit Committee and has been since at least April 2013.  Defendant Cunningham knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects.  Despite this knowledge, defendant Cunningham knowingly or recklessly caused or allowed the Company to make improper statements in the Company's press releases and public filings concerning the Company's business prospects.  Blucora paid defendant Cunningham the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $50,500 | $106,200 | $68,145 | $224,845 |

Defendant Cunningham is a citizen of Washington.

21.    Defendant Elizabeth J. Huebner ("Huebner") is a Blucora director and has been since May 2009.  Defendant Huebner is also Chairman of Blucora's Audit Committee and has been since at least April 2013.  Defendant Huebner knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 8 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

harm the Company's business prospects.  Despite this knowledge, defendant Huebner knowingly or recklessly caused or allowed the Company to make improper statements in the Company's press releases and public filings concerning the Company's business prospects.  Blucora paid defendant Huebner the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $39,750 | $79,650 | $50,427 | $169,827 |

Defendant Huebner is a citizen of Washington.

22.     Defendant Steven W. Hooper ("Hooper") is a Blucora director and has been since April 2011.  Defendant Hooper is also a member of Blucora's Audit Committee and has been since at least June 2014.  Defendant Hooper knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects.  Despite this knowledge, defendant Hooper knowingly or recklessly caused or allowed the Company to make improper statements in the Company's press releases and public filings concerning the Company's business prospects.  Blucora paid defendant Hooper the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $32,750 | $79,650 | $50,427 | $162,827 |

Defendant Hooper is a citizen of Washington.

23.     Defendant Lance G. Dunn ("Dunn") is a Blucora director and has been since August 2012.  Defendant Dunn knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT
- 9 -
STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects. Despite this knowledge, defendant Dunn knowingly or recklessly caused or allowed the Company to make improper statements in the Company's press releases and public filings concerning the Company's business prospects. Blucora paid defendant Dunn the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $20,750 | $79,650 | $50,427 | $150,827 |

Defendant Dunn is a citizen of Iowa.

24. Defendant David H. S. Chung ("Chung") is a Blucora director and has been since May 2013. Defendant Chung knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects. Despite this knowledge, defendant Chung knowingly or recklessly caused or allowed the Company to make improper statements in the Company's press releases and public filings concerning the Company's business prospects. Blucora paid defendant Chung the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $17,687 | $199,125 | $146,651 | $363,463 |

Defendant Chung is a citizen of California.

25. Defendant Jules Haimovitz ("Haimovitz") was a Blucora director from October 2005 to May 2014. Defendant Haimovitz was also a member of Blucora's Audit Committee

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 10 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

from at least April 2013 to at least April 2014.  Defendant Haimovitz knew that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects.  Despite this knowledge, defendant Haimovitz knowingly or recklessly caused or allowed the Company to make improper statements in the Company's press releases and public filings concerning the Company's business prospects.  Blucora paid defendant Haimovitz the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | Option Awards | Total |
|---|---|---|---|---|
| 2013 | $27,750 | $79,650 | $50,427 | $157,827 |

Defendant Haimovitz is a citizen of California.

26.   The defendants identified in ¶¶17-18 are referred to herein as the "Officer Defendants."  The defendants identified in ¶¶17, 19-25 are referred to herein as the "Director Defendants."  The defendants identified in ¶¶20-22, 25 are referred to herein as the "Audit Committee Defendants."  Collectively, the defendants identified in ¶¶17-25 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

27.   By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Blucora and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Blucora in a fair, just, honest, and equitable manner.  The Individual Defendants

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 11 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

were and are required to act in furtherance of the best interests of Blucora and not in furtherance of their personal interest or benefit.

28. To discharge their duties, the officers and directors of Blucora were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Blucora were required to, among other things:

(a) ensure that the Company operated within the guidelines of its significant business partners, including Google;

(b) properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business operations;

(c) ensure that the Company complied with its legal obligations and requirements, including complying with regulatory requirements and disseminating truthful and accurate statements to the investing public;

(d) conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(e) remain informed as to how Blucora conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT
- 12 -
STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

**Breaches of Duties**

29.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Blucora, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

30.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to utilize a wide range of dubious tactics to artificially inflate ad revenue in violation of agreements with the Company's largest business partner, Google.   The Individual Defendants further breached their duty of loyalty and good faith by concealing Blucora's improper tactics from the public and failing to disclose that Google would likely reduce or sever its business agreements with the Company. These improper practices wasted the Company's assets, and caused Blucora to incur substantial damage.

31.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Blucora, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Blucora has expended, and will continue to expend, significant sums of money.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

32.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 13 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

33.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive and defraud Blucora's customers, causing substantial long-term detriment to the Company; (ii) deceive the investing public, including shareholders of Blucora, regarding the Individual Defendants' management of Blucora's operations; (iii) facilitate defendant Snyder's illicit sale of over $28.6 million of CIG shares while in possession of material, non-public information; and (iv) enhance the Individual Defendants' executive and directorial positions at Blucora and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions.  In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

34.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, the Individual Defendants caused the Company to issue improper financial statements.

35.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to conceal adverse information concerning the Company's operations, financial condition, and future business prospects.

36.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release

improper statements.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

37.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## THE COMPANY'S MISLEADING AND IMPROPER ADVERTISING TACTICS VIOLATE GOOGLE'S POLICIES AND GUIDELINES

38.     Blucora, through InfoSpace, operates several "metasearch" websites, including infospace.com, webcrawler.com, dogpile.com, and metacrawler.com.  These InfoSpace websites earn money through advertising revenue-based advertisement clicks, as governed by various agreements with Google, Yahoo! Inc. ("Yahoo!"), and other advertisers.  When customers click on an advertisement, Google (or other of the Company's advertising partners) receive a fee, and InfoSpace receives a portion of that fee.  Google is by far the Company's largest source of revenue, accounting for 88% of Blucora's total search revenues in 2013, and 66% of the Company's total revenue for the same period.

39.     Google's advertising policies are well publicized and widely available.  Among other requirements, advertisers working with Google are required to keep ads safe and secure, are prohibited from violating users' trust or privacy, and the advertised products must be legal and safe.  Unsurprisingly, Google also has a "zero-tolerance policy on child pornography" and "prohibit[s] any advertising related to child pornography."  In addition to Google's general

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 15 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

policies and guidelines, InfoSpace is required to follow additional guidelines and specifications with respect to the Company's websites and advertising pursuant to service agreements between Blucora and Google.   As was recently disclosed, Blucora has repeatedly violated Google's guidelines in an attempt to drive up advertising revenue through improper means.

**Illicit Advertising**

40.     InfoSpace earns advertising profits from searches for child pornography and other illicit terms.  Many search engines, such as Google, use a technique called autocomplete to help users save time in searching.  As the user types into the search box, autocomplete attempts to predict what the user is searching for and adds a list of related terms.  For example, if the user types the word "basketball," autocomplete will suggest related terms like basketball games, basketball rankings, or basketball playoffs.

41.     As detailed in the Gotham City Research report, webcrawler.com and dogpile.com use the autocomplete technique to help their users find child pornography while providing advertising links in the search results.  For example, when a user types the word "child" into the search box, autocomplete suggests the following related terms: child models galleries, child art models, children naturism, child naturist, child lover, child underwear models, childprono, child abuse, and childfugga.

**Involuntary Clicks**

42.     As detailed in the Gotham City Research report, a substantial portion of the Company's search traffic and advertising revenue is derived from malware and computer viruses. For example, infospace.com derives more than 94% of its traffic from css.infospace.com, a virus/browser hijacker.  In essence, css.infospace.com installs on a users' computer without the users' permission or consent and appears to look like a legitimate search engine such as Google.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 16 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

When the user thinks they are searching through Google, the search is redirected to other websites to improperly generate advertising revenue for InfoSpace.  Worse, css.infospace.com often changes computers' privacy settings and exploits vulnerabilities to steal the users' personal files or information.

43.   InfoSpace also generates involuntary advertising clicks by obfuscating advertisements in an attempt to fool the user into thinking they are clicking on actual search results.  For example, although the Company's agreement with Google states that the Company's websites must limit advertising search result placements to certain portions of the webpage, InfoSpace websites have been found to pepper advertisements throughout the search results, at times taking up more space than the actual search results.  The mixing of advertisements with legitimate search results makes it unclear to the user which links are ads and which are legitimate search results, thus often resulting in unintentional clicks on ads.  The Company also uses other complex "cloaking" tactics which provide users with different results than they expected, in violation of Google's guidelines.

**DEFENDANT SNYDER DUMPS STOCK WHILE THE INDIVIDUAL DEFENDANTS MAKE IMPROPER STATEMENTS ABOUT THE COMPANY'S BUSINESS**

44.   On November 5, 2013, Blucora issued a press release titled "Blucora Reports Third Quarter Results."  The Company stated that the "business performed well in the third quarter" and boasted growth in the Search segment.  The press release, however, did not disclose that the growth was attributable to improper advertising tactics that violated Google's policies and guidelines.   In particular, the Company stated:

> "Our businesses performed well in the third quarter," said Bill Ruckelshaus, President and Chief Executive Officer of Blucora. "InfoSpace is executing through changes in the search marketplace and TaxACT is readying for the coming tax season. We were also thrilled to add Monoprice to our Company in

the third quarter. I am pleased with the focus of our teams and optimistic about the many opportunities in front of us at Blucora."

\* \* \*

**Search**

Performance in the third quarter of 2013 reflects growth in InfoSpace owned and operated properties and the addition of new search distribution partners. Segment revenue for the third quarter of 2013 was $107.7 million, up 18 percent over the third quarter of 2012.

Segment income was $21.3 million, up 30 percent over prior year.

45.    On November 5, 2013, the Company also filed its Quarterly Report on Form 10-Q with the SEC for the period ending September 30, 2013. The Company's Form 10-Q was signed by defendant Emans, and reaffirmed the Company's financial results announced that same day. The Form 10-Q noted that if advertisers perceive they are not receiving quality traffic to their sites through InfoSearch's services, they may reduce or eliminate advertising.  The Form 10-Q further noted some of the potential negative impacts if Google did not renew its contract with InfoSearch.    The  Form  10-Q  failed  to  disclose,  however,  that  many  of  the  purported advertisement clicks were garnered through malware, viruses, and trickery, thus making them worthless to the advertisers.  The Form 10-Q also failed to disclose that the Company was using many tactics that violated Google's policies and guidelines, thus significantly jeopardizing the possibility of a contract renewal with Google.  The Form 10-Q stated, in relevant part:

> ***If advertisers perceive that they are not receiving quality traffic to their sites through their paid-per-click advertisements, they may reduce or eliminate their advertising through the Internet, which could have a negative material impact on our business and financial results.***
>
> Most of our revenue from our Search business is based on the number of clicks on paid search results that are served on our web properties or those of our distribution partners. Each time a user clicks on a paid search result, the Search Customer that provided the paid search result receives a fee from the advertiser who paid for the click and the Search Customer pays us a portion of that fee. If

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 18 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

the click originated from one of our distribution partners' web properties, we share a portion of the fee we receive with such partner. If an advertiser receives what it perceives to be poor quality traffic, meaning that the advertiser's objectives are not met for a sufficient percentage of clicks for which it pays, the advertiser may reduce or eliminate its advertisements through the Search Customer that provided the commercial search result to us. This leads to a loss of revenue for our Search Customers and consequently lower fees paid to us. Also, if a Search Customer perceives that the traffic originating from one of our web properties or the web property of a distribution partner is of poor quality, the Search Customer may discount the amount it charged all advertisers whose paid click advertisements appeared on such website or web property, and accordingly may reduce the amount it pays us. The Search Customer may also suspend or terminate our ability to provide its content through such websites or web properties if such activities are not modified to satisfy the Search Customer's concerns.

***Poor quality traffic may be a result of invalid click activity. Such invalid click activity occurs, for example, when a person or automated click generation program clicks on a commercial search result to generate fees for the web property displaying the commercial search result rather than to view the webpage underlying the commercial search result. Some of this invalid click activity is referred to as "click fraud."*** When such invalid click activity is detected, the Search Customer may not charge the advertiser or may refund the fee paid by the advertiser for such invalid clicks. If the invalid click activity originated from one of our distribution partners' web properties or our owned and operated properties, such non-charge or refund of the fees paid by the advertisers in turn reduces the amount of fees the Search Customer pays us. Initiatives we undertake to improve the quality of the traffic that we send to our Search Customers may not be successful and, even if successful, may result in loss of revenue in a given reporting period.

\* \* \*

***Most of our search services revenue is attributable to Google, and the loss of, or a payment dispute with, Google or any other significant Search Customer would harm our business and financial results.***

If Google, Yahoo!, or any future significant Search Customer were to substantially reduce or eliminate the content it provides to us or to our distribution partners, our business results could materially suffer if we are unable to establish and maintain new Search Customer relationships, or expand our remaining Search Customer relationships, to replace the lost or disputed revenue. Google accounted for approximately 76% of our total Company revenues in the third quarter of 2013. Yahoo! remains an important partner and contributes to our value proposition as a metasearch provider, but over the past several years, Yahoo!'s percentage or our revenue has declined, and we expect this trend to continue. We continue to believe that if our Google relationship ended or was impaired, we could replace a portion of the lost revenue with revenue from Yahoo!, but because

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT
- 19 -
STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

of the increased importance of Google to our Search operations, these two Search Customers are no longer interchangeable….

The success of our Search business depends on our ability to negotiate extensions of our Search Customer agreements on favorable terms. We are currently in the process of negotiating a renewal of our agreement with Google, which runs to March 31, 2014. Our agreement with Yahoo! recently renewed, and now runs to December 31, 2014. If we cannot negotiate extensions of our current agreements or new agreements on favorable terms (including revenue share rates, our continued ability to offer combine search results from different partners as part of our metasearch service, and other operational aspects of our search services), the financial results of our Search business will suffer.

### THE TRUTH EMERGES

46.     The truth behind the Company's business prospects and Individual Defendants' wrongdoing began to emerge on February 18, 2014, when Gotham City Research published a report detailing numerous improprieties concerning the Company's online advertising methods. The report demonstrated that at least 50% of Blucora's web traffic is derived from malware, click fraud, illicit traffic such as child pornography, and otherwise suspect traffic.  The report further forecast enhanced scrutiny from Google pending the Company's upcoming contract renewal, and noted that Google would likely reduce or eliminate its ties with Blucora as a result.  In addition, the report provided several examples of Blucora's improprieties dating back to at least 2005.

47.     On this news, Blucora's market capitalization plunged more than 8.4%, or $2 per share, on February 18, 2014, to close at $21.70 compared to the previous trading day's closing of $23.70, erasing over $82.3 million in market capitalization in a few days.

48.     On February 20, 2014, after the market closed, the Company filed a Current Report on Form 8-K with the SEC announcing that, as predicted by Gotham City Research, Google canceled a portion of the service agreement contract with Blucora.  In particular, the Form 8-K revealed that InfoSpace will no longer be allowed to display ads for search traffic that originates from mobile or tablet devices, but instead would be limited to displaying ads for

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 20 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

search traffic that originates from desktops and laptops.  The mobile business from Google accounted for 15% of the existing contract between Blucora and Google.  Thus, Google's mobile business represented approximately 13% of Blucora's overall search revenues in 2013, and 10% of the Company's overall revenues for the same period.  The Form 8-K stated, in relevant part:

> Item 1.01 ENTRY INTO A MATERIAL DEFINITIVE AGREEMENT
>
> On February 19, 2014, InfoSpace LLC ("InfoSpace"), a subsidiary of Blucora, Inc. ("Blucora"), entered into the Google Services Agreement (the "GSA") with Google, Inc. ("Google"). The term of the GSA begins on April 1, 2014 and runs to March 31, 2017, and accordingly it will replace the current Amended and Restated Google Services Agreement (as amended, the "Prior Agreement") between InfoSpace and Google, when the Prior Agreement expires in accordance with its terms on March 31, 2014. In addition, the term of the GSA may be extended until March 31, 2018 upon the mutual agreement of the parties.
>
> Under the terms the GSA, InfoSpace can display search results and advertisements from Google on InfoSpace's owned and operated search websites and provide Google search results and advertisements to the websites in InfoSpace's distribution network. Google pays InfoSpace a percentage of the revenue collected by Google as a result of Internet users clicking on advertisements provided by Google and displayed by InfoSpace and its distribution partners.
>
> In general, the material terms of the Prior Agreement and the GSA are similar. However, *beginning on April 1, 2014, InfoSpace will no longer display ads provided by Google's AdSense for Search for search traffic that originates from mobile and tablet devices.* For this mobile and tablet traffic, InfoSpace instead intends to display mobile advertisements from other sources, including Yahoo!'s ad network. While the impact of this change is limited to a relatively small subset of our current search business and may be partially offset by the alternative advertising sources, we expect this change will result in slowing of InfoSpace's search business revenue growth rate and, if we are unsuccessful or limited in our ability to transition our search services to provide value to mobile and tablet end-users, *this change may result in a longer term negative impact on InfoSpace's search business.*
>
> InfoSpace will continue to display ads provided by Google's AdSense for Search for search traffic that originates from desktops and laptops. This traffic constituted approximately 85% of the revenue generated by InfoSpace's search business in the fourth quarter of fiscal 2013, and the revenue share percentages that determine the payments that InfoSpace receives from Google for this traffic remain unchanged from the Prior Agreement.

49.     In the wake of the disclosure, Blucora's stock plunged another 8%, or $1.77 per share on February 21, 2014, to close at $19.80 compared to the previous trading day's closing of $21.57, erasing an additional $72.9 million in market capitalization.   Between February 14, 2014, the last trading day before the Gotham City Research report was published, and February 21, 2014, the day after the Company admitted that Google severed certain portions of its service agreement with the Company, Blucora's market capitalization fell more than 16.4%, from $976.3 million to $815.7 million, wiping out more than $160.6 million in one week of trading.

## REASONS THE STATEMENTS WERE IMPROPER

50.     The statements referenced above were each improper when made because they failed to disclose and misrepresented the following material, adverse facts, which the Individual Defendants knew, consciously disregarded, or were reckless in not knowing:

(a)     more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic;

(b)     the Company's improper advertising tactics violated Google's policies and guidelines;

(c)     once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects; and

(d)     as a result of the foregoing, the Individual Defendants' representations concerning the Company's business prospects were improper.

## INSIDER SALES BY DEFENDANT SNYDER

51.     Rather than providing the market with correct information, defendant Snyder, a member of Blucora's Board and CEO of CIG, used his knowledge of Blucora's material, non-public information to cause CIG to sell approximately 33% of its holdings on November 20,

2013, while the Company's stock was artificially inflated.  These sales took place just a few months before Google was set to reevaluate its service agreement with Blucora.  As a director of Blucora, defendant Snyder was privy to material, non-public information about the Company's true business health, including the deceptive and unscrupulous nature of the Company's search and advertising tactics, and the negative affect these tactics would have on the Company's advertising partners, including Google.

52.     While in possession of this knowledge, defendant Snyder caused CIG to sell 1,006,093 shares of Blucora stock for proceeds of $28,673,650.50.  These sales were timed to maximize profit from Blucora's then artificially inflated stock price.  These sales are suspicious given that his stock sales represented 33% of CIG holdings, which was CIG's first ever disposition of Blucora shares since it first invested in the Company in August 2011.

## DAMAGES TO BLUCORA

53.     As a result of the Individual Defendants' improprieties, Blucora disseminated improper, public statements concerning the Company's advertising business prospects.  These improper statements have devastated Blucora's credibility as reflected by the Company's over $160.6 million, or 16.46%, market capitalization loss.  Further, because the Individual Defendants caused or allowed the Company to repeatedly use improper tactics to increase advertising revenue over the span of several years, the confidence in Blucora's advertising and search business has been shattered.  As a result, the Company will continue to suffer loss of revenue from advertisers or other business partners for the foreseeable future.

54.     Further, as a direct and proximate result of the Individual Defendants' actions, Blucora has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 23 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

(a)      costs incurred from defending and paying any settlement in the class actions for violations of federal securities laws; and

(b)      costs incurred from compensation and benefits paid to the defendants who have breached their duties to Blucora, including all ill-gotten gains from insider selling by defendants.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

55.      Plaintiff brings this action derivatively in the right and for the benefit of Blucora to redress injuries suffered, and to be suffered, by Blucora as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Blucora is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

56.      Plaintiff will adequately and fairly represent the interests of Blucora in enforcing and prosecuting its rights.

57.      Plaintiff was a shareholder of Blucora at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Blucora shareholder.

58.      Plaintiff has not made any demand on shareholders of Blucora because such demand would be futile.  As a widely-held public company, Blucora has approximately 42.2 million shares outstanding; identifying and making demand on the hundreds of thousands, if not millions, of shareholders who own these shares would be impossible for plaintiff, both as a matter of practical reality and in terms of financial cost.

59.      The current Board of Blucora consists of eight individuals: defendants Ruckelshaus, Snyder, Cunningham, Huebner, Hooper, Dunn, and Chung, and non-defendant

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT
- 24 -
STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

Christopher Walters.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because the Director Defendants' Conduct Is Not a Valid Exercise of Business Judgment**

60.    Defendants Ruckelshaus, Snyder, Cunningham, Huebner, Hooper, Dunn, and Chung's challenged misconduct at the heart of this case constitutes a substantial threat to the Company's revenues.   As the ultimate decision-making body of the Company, the Board affirmatively adopted, implemented, and condoned a business strategy based on deliberate and widespread improper activities.   Causing the Company to engage in the improper tactics that jeopardize its business relationships is not a protected business decision and such conduct can in no way be considered a valid exercise of business judgment.   Accordingly, demand on the Board is excused.

**Demand Is Excused Because Defendants Ruckelshaus, Snyder, Cunningham, Huebner, Hooper, Dunn, and Chung Face a Substantial Likelihood of Liability for Their Misconduct**

61.    Defendants Ruckelshaus, Snyder, Cunningham, Huebner, Hooper, Dunn, and Chung breached their fiduciary duty by causing or allowing the Company to utilize numerous manipulative and improper tactics to gain advertising revenue, in violation of Google's policies and guidelines.   These actions have severely harmed the Company's reputation and goodwill, and will significantly hamper the Company's ability to enter into and/or renew revenue sharing agreements with other advertisers, including Google.   Indeed, as a result of these defendants' actions, Google refused to extend advertising contracts with Blucora with respect to all mobile and tablet advertisements.

62.    Defendant Snyder caused CIG to sell Blucora stock under highly suspicious circumstances.  As detailed above, defendant Snyder, as a member of Blucora's Board, possessed

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 25 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

material, non-public company information and used that information to benefit himself and CIG, a larger shareholder of Blucora with defendant Snyder as CEO.  As alleged herein, CIG's trading was suspicious in timing and amount.  CIG sold over one million shares, or 33%, of its Blucora shares for proceeds of over $28.6 million.  This was CIG's first ever disposition of Blucora shares since it first invested in the Company in August 2011.  Accordingly, defendant Snyder faces a substantial likelihood of liability for breaching his fiduciary duty of loyalty, rendering any demand upon him futile.

63.     The principal professional occupation of defendant Ruckelshaus is his employment with Blucora, pursuant to which he received and continues to receive substantial monetary compensation and other benefits.  Specifically, defendant Ruckelshaus receives an annual salary of $450,000, which may increase at the Board's discretion, and also received $823,140 in stock awards, $1,094,270 in option awards, $450,450 in non-equity incentive plan compensation, and $10,515 in all other compensation, for a total of $2,828,375 in compensation in 2013.  Any demand on defendant Ruckelshaus would be futile because he is dependent upon the defendant directors implicated in the wrongdoing for his livelihood.  He will not vote to initiate an action against defendants Snyder, Cunningham, Huebner, Hooper, Dunn, and Chung, defendants who are not disinterested and/or independent and who exert influence over defendant Ruckelshaus's compensation by virtue of their positions as members of the Board.  This lack of independence renders defendant Ruckelshaus incapable of impartially considering a demand to commence and vigorously prosecute this action.

64.     Each of the defendant directors of Blucora authorized and/or permitted the improper statements disseminated directly to the public, authorized and/or permitted the issuance of various of the improper statements and are principal beneficiaries of the wrongdoing alleged

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT
- 26 -
STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

herein and thus, could not fairly and fully prosecute such a suit even if such suit was instituted by them.

65.     Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for Blucora for any of the wrongdoing alleged by plaintiff herein.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

66.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

67.     The Individual Defendants owed and owe Blucora fiduciary obligations.   By reason of their fiduciary relationships, the Individual Defendants owed and owe Blucora the highest obligation of good faith, fair dealing, loyalty, and due care.

68.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of candor, good faith, and loyalty.   More specifically, the Individual Defendants violated their duty of good faith by creating a culture of lawlessness within Blucora, and/or consciously failing to prevent the Company from engaging in the unlawful acts complained of herein.

69.     The Officer Defendants either knew, were reckless, or were grossly negligent in disregarding the illegal activity of such substantial magnitude and duration.   The Officer Defendants either knew, were reckless, or were grossly negligent in not knowing that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 27 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

would severely harm the Company's business prospects.  Accordingly, the Officer Defendants breached their duty of care and loyalty to the Company.

70.     Director Defendants, as directors of the Company, owed Blucora the highest duty of loyalty.  These defendants breached their duty of loyalty by recklessly permitting the improper activity concerning the Company's unscrupulous advertising tactics and false and misleading statements.  The Director Defendants knew or were reckless in not knowing that: (i) more than half of the Company's web traffic was derived from malware, click fraud, illicit traffic, and otherwise suspect traffic; (ii) the Company's improper advertising tactics violated Google's policies and guidelines; and (iii) once revealed, the news of the Company's wrongful conduct would severely harm the Company's business prospects.  Accordingly, the Director Defendants breached their duty of loyalty to the Company.

71.     The Audit Committee Defendants breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee, which they knew or were reckless in not knowing contained improper statements and omissions.  The Audit Committee Defendants completely and utterly failed in their duty of oversight, and failed in their duty to appropriately review financial results, as required by the Audit Committee Charter in effect at the time.

72.     Defendant Snyder breached his duty of loyalty by causing CIG to sell Blucora stock on the basis of the knowledge of the improper information described above before that information was revealed to the Company's shareholders.  The information described above was proprietary, non-public information concerning the Company's future business prospects.  It was a proprietary asset belonging to the Company, which defendant Snyder used for his own benefit when he caused CIG to sell Blucora common stock.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 28 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

73.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Blucora has sustained significant damages, as alleged herein.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

74.     Plaintiff, on behalf of Blucora, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76.     As a result of the decision to operate the Company's search and advertising segment in an unethical manner and falsely tout the Company's business products by failing to conduct proper supervision, the Individual Defendants have caused Blucora to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

77.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

78.     Plaintiff, on behalf of Blucora, has no adequate remedy at law.

## COUNT III

### Against the Individual Defendants for Unjust Enrichment

79.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

80.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Blucora.  The Individual Defendants were

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 29 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Blucora.

81.     Defendant Snyder caused CIG to sell Blucora stock while in possession of material, adverse non-public information that artificially inflated the price of Blucora stock.  As a result, defendant Snyder and CIG profited from defendant Snyder's misconduct and were unjustly enriched through their exploitation of material and adverse inside information.

82.     Plaintiff, as a shareholder and representative of Blucora, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

83.     Plaintiff, on behalf of Blucora, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of Blucora, demands judgment as follows:

A.     Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment;

B.     Directing Blucora to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Blucora and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 30 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

1.     a proposal to strengthen the Company's controls over financial reporting;

2.     a proposal to strengthen Blucora's oversight of its disclosure procedures;

3.     a proposal to strengthen the Company's controls over the Company's search and advertising segment;

4.     a provision to control insider selling;

5.     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

6.     a provision to permit the shareholders of Blucora to nominate at least three candidates for election to the Board;

C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of Blucora has an effective remedy;

D.     Awarding to Blucora restitution from defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants, including all ill-gotten gains from insider selling by defendants;

E.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

- 31 -

STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

DATED this 16th day of June, 2014.

STRITMATTER KESSLER WHELAN

s/ Brad J. Moore
BRAD J. MOORE, WSBA #21802
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777
Facsimile: (206) 728-2131
brad@stritmatter.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
JENNY L. DIXON
GINA STASSI
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsarroyo.com
csmith@robbinsarroyo.com
jdixon@robbinsarroyo.com
gstassi@robbinsarroyo.com

RYAN & MANISKAS, LLP
RICHARD A. MANISKAS
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
Telephone: (484) 588-5516
Facsimile: (484) 450-2582
rmaniskas@rmclasslaw.com

Attorneys for Plaintiff

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT
- 32 -
STRITMATTER KESSLER WHELAN
200 Second Avenue West
Seattle, WA 98119
Telephone: (206) 448-1777

## VERIFICATION

I, Mark Saracino, under penalty of perjury, state as follows:

I am the Plaintiff in the above-captioned action. I have read the foregoing Complaint and authorized its filing. Based upon the investigation of my counsel, the allegations in the Complaint are true to the best of my knowledge, information and belief.

DATED: _6/10/14_

_____
Mark Saracino